## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JEREMY JOHNSON, ANDREW ROMANO,
EMILY SINES, JORDAN TOLBERT, and
SAMANTHA TORRES,

        Plaintiffs,                Case No.

v.                                  Hon.

OAKLAND UNIVERSITY, and
JAMES ZENTMEYER, in his individual and
official capacities,

        Defendants.

_____

Adam M. Taub (P78334)
Joseph X. Michaels (P79084)
CROSON, TAUB, & MICHAELS, PLLC
Attorneys for Plaintiff
117 N. First St. Ste. 111
Ann Arbor, Michigan 48104
(734) 519-0874
ataub@ctmlawyers.com
jmichaels@ctmlawyers.com

_____

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiffs, Jeremy Johnson, Andrew Romano, Emily Sines, Jordan Tolbert, and Samantha Torres, by and through their attorneys, CROSON, TAUB, & MICHAELS, PLLC hereby bring this action against Defendants Oakland University and James Zentmeyer, and hereby state as follows:

**INTRODUCTION**

1.     Plaintiffs Jeremy Johnson, Andrew Romano, Emily Sines, Jordan Tolbert, and Samantha Torres are all current or former undergraduate students at Oakland University ("OU") and worked for University Housing in the 2020-21 academic year.

2.     Plaintiffs also jointly formed an organization called the Oakland United Student Workers Coalition ("OUSWC") in order to unionize and engage in collective action with student workers across campus.

3.     Plaintiffs, through OUSWC, engaged in political speech and threatened petitions and protests related to reinstating programs that OU planned on cutting the following year, reversing decisions to cut Resident Assistants' stipends and cap Desk Attendants' hours, and allowing student workers to bargain with OU prior to making changes to student employment.

4.     However, as a result of this protected speech and conduct, Defendants unlawfully and illegally retaliated against Plaintiffs and denied them equal protection under the law. Due to their protected activity, Plaintiffs were summarily terminated from their positions with OU Housing, each receiving identical termination letters falsely claiming Plaintiffs were insubordinate.

5.     Plaintiffs thus bring this civil-rights action pursuant to the First Amendment to the United States Constitution and 42 U.S.C. § 1983 to remedy

2

unconstitutional violations of their rights to freedom of speech in public employment, and to ensure that public employees such as themselves are free to speak their views without fear of reprisals based on their right to free speech.

## PARTIES, JURISDICTION, AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as the claims asserted arise out of federal constitutional and statutory law, namely 42 U.S.C. § 1983 and U.S CONST. AMEND. I, XIV.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because all of the events giving rise to this claim took place in this district and Defendants are either governmental entities within the district or individuals who, on information and belief, reside in this district.

8.      Plaintiff Jeremy Johnson is an individual who resides in Flint, Michigan in the County of Genesee.

9.      Plaintiff Andrew Romano is an individual who resides in Oxford, Michigan in the County of Oakland.

10.     Plaintiff Emily Sines is an individual who resides in Berkley, Michigan in the County of Oakland.

11.     Plaintiff Jordan Tolbert is an individual who resides in Novi, Michigan in the County of Oakland.

12.     Plaintiff Samantha Torres is an individual who resides in Ann Arbor, Michigan in the County of Washtenaw.

13.     Defendant Oakland University is a public entity created under the Constitution of the State of Michigan. It exercises governmental control in Oakland County, MI.

14.     Defendant James Zentmeyer is a managerial employee at Defendant Oakland University. Upon information and belief, he resides in Oakland County.

## STATEMENT OF FACTS

15.     Plaintiffs Jeremy Johnson, Andrew Romano, Emily Sines, Jordan Tolbert, and Samantha Torres are all current or former undergraduate students at Oakland University ("OU") and worked for University Housing in the 2020-21 academic year.

16.     Mr. Johnson, Ms. Tolbert, and Ms. Torres worked as Resident Assistants ("RAs") in Oak View Hall while Mr. Romano and Ms. Sines were Desk Attendants ("DAs") in Oak View Hall. Mr. Romano was also a Sustaining Our Planet Earth ("SOPE") Ambassador.

17.     Throughout their employment, Plaintiffs ultimately reported up to Defendant James Zentmeyer, the Director of University Housing at OU.

4

18.     Throughout their employment, Plaintiffs were well qualified for the positions that they held and performed them diligently and competently. Prior to the events described below, none of the Plaintiffs had ever received any discipline.

19.     University Housing included several programs through which student employees could earn compensation.

20.     Two such programs were Nightwatch and SOPE.

21.     Around February 2021, student employees began learning that the Nightwatch and SOPE programs were being eliminated from OU Housing due to alleged budget cuts.

22.     DAs would also have their scheduled hours reduced to an average of 10 hours a week.

23.     And a number of other program cuts were ultimately announced, including Academic Peer Mentor ("APM") Housing benefits and the Bear Bus program.

24.     Plaintiffs were upset about these budget cuts and openly advocated for their reinstatement.

25.     After OU failed to address their conventional advocacy, in early March, Plaintiffs met and decided to form an organization called the Oakland United Student Workers Coalition ("OUSWC") in order to unionize and engage in collective action with workers across campus.

5

26.     The Coalition had an Instagram page (@oaklandstudentworkers) and a 30+ member GroupMe where they shared a petition, discussed strategy, and planned negotiations with the goal of improving the conditions of student workers across campus, regardless of department.

27.     Mr. Johnson also spoke with the American Federation of Teachers ("AFT") Academics over the phone, and Ms. Tolbert spoke to the United Auto Workers ("UAW") to discuss the unionization process.

28.     Additionally, the group wrote and posted a Change.org petition titled "Oakland University Housing: Save Student Jobs." This petition laid out the Coalitions' demands and the reasoning for them.

29.     Specifically, the petition stated that it aimed to meet these demands:

- Reinstate the SOPE program in its entirety;

- Reinstate Nightwatch in its entirety (pre-2020);

- Eliminate the 10 hour cap on Desk Attendant work;

- Reinstate APM Housing benefits;

- Reverse any potential cut to RA stipends;

- Reinstate the Bear Bus program in its entirety; and

- Give student workers a seat at the table before making any changes to student employment.

30.     On March 9th, Plaintiffs distributed flyers for a peaceful protest titled "March On Sunset Terrace" that was to take place on March 11th.

31.     The protest flyer stated Plaintiffs' intent to march for student jobs as well as POC jobs, female jobs, and LGBTQ+ jobs.

32.     That evening, Mr. Zentmeyer, invited Mr. Johnson, Ms. Tolbert, and Ms. Torres to a virtual meeting to discuss the grievances OUSWC outlined in their petition and how to move forward.

33.     Mr. Zentmeyer stated his position regarding budgetary concerns due to COVID-19. He also claimed that some of the points in Plaintiffs' petition were wrong and stated that he felt that instead of planning a protest, they should have gone to him with their concerns.

34.     Ultimately, Plaintiffs and Mr. Zentmeyer were unable to reach any compromise, and Plaintiffs informed Mr. Zentmeyer of the protest and stated that they had support from many campus groups/clubs, students, and student housing employees.

35.     On March 10th, all five Plaintiffs attended a meeting with Mr. Zentmeyer. At this meeting, Plaintiffs told Mr. Zentmeyer that if they could start making progress on the Coalitions' demands—specifically the reinstatement of SOPE—they would call off or postpone the protest for the time being.

36.     Mr. Zentmeyer responded that having SOPE reinstated was extremely unlikely and claimed that the Housing Department, as an auxiliary in the University budget, does not receive funding from the university.

37.     Plaintiffs offered to work with Mr. Zentmeyer to secure the funding, but he said he did not want to accept any money from the University. Mr. Zentmeyer alluded that his supervisor, Vice President Glenn McIntosh, was pressuring him and that if any Housing employees attended Plaintiffs' protest, it would be grounds for termination.

38.     Additionally, when Mr. Romano raised the concept of unionization, Mr. Zentmeyer said, "Please don't use the word union . . . . We won't go there."

39.     On the morning of March 11th, the University informed Plaintiffs that it would reinstate Nightwatch and SOPE for 2021-2022 through CARES Act funding.

40.     At a meeting with Mr. Zentmeyer at noon that day, Plaintiffs informed him that they had decided to shift the protest to a celebration of the success of collective action efforts as a show of good faith.

41.     Mr. Zentmeyer attended the celebration and stated that he was pleased with the outcome, that he looked forward to continued collaboration with Plaintiffs, and that his door was always open if they had any concerns.

42.     Plaintiffs, however, made sure to explain that even though some of their demands had been met, they would still fight for those who were the subject of unfair practices and mistreatment.

43.     After the celebration, Mr. Zentmeyer became quiet and hard to reach once the looming threat of a protest was gone.

44.     OUSWC attempted to meet with Vice President Glenn McIntosh and Mr. Zentmeyer several times between March 11 and March 18 to discuss the remaining student worker concerns, but these attempts were unsuccessful. Nonetheless, the Coalition continued to advocate and work to be more inclusive on behalf of all student workers.

45.     On March 19th, Mr. Johnson, Mr. Romano, and Ms. Tolbert decided to take up Mr. Zentmeyer's offer of having an "open door" and went to his office in Hamlin Hall to speak with him about concerns raised by student workers within the Coalition.

46.     Mr. Zentmeyer was busy, but they decided to wait in the lobby until he was free. After about 20 minutes, Plaintiffs were directed to wait in an open room.

47.     When Mr. Zentmeyer entered the room where Plaintiffs were waiting, he began ranting angrily. He told them that they had made him out to be a "dismissive liar" via social media on Ms. Tolbert's Oakland University Student Congress campaign Instagram account, claimed that they had refused to follow

protocol when attempting to meet with him, and accused them of camping outside of his office and "holding him hostage."

48.     When Ms. Tolbert asked to see the social media post Mr. Zentmeyer was referencing, he told her to "shove it."

49.     At no point did he ask Plaintiffs why they were there.

50.     Instead, he terminated all five Plaintiffs even though Ms. Sines and Ms. Torres were not even present.

51.     Later that day, Plaintiffs each received nearly identical termination letters several hours after the meeting with Mr. Zentmeyer.

52.     When Plaintiffs asked for specific reasons for their terminations, the individuals they asked simply stated it was for insubordination and violating the expectations of their positions despite them having clean records. No further elaboration was offered.

53.     The real reason for Plaintiffs' terminations, however, was their speech on matters of public concern, political petitions, and attempts to organize student workers.

54.     Adding insult to injury, Plaintiffs who lived in student housing were told they had four days to vacate their rooms, leaving them scrambling to find new housing with nearly no notice.

55.     On or about April 2, 2021, Plaintiffs, through counsel, outlined the illegal retaliation they suffered as a result of their terminations to OU.

56.     Since that time, Mr. Johnson, Mr. Romano, and Ms. Tolbert have suffered additional retaliation by OU for their protected activity.

57.     Mr. Johnson, Mr. Romano, and Ms. Tolbert each hold positions within Student Congress at OU.

58.     Within their positions, each is required to work with employees in Student Housing in order to perform their essential job duties.

59.     Due to their protected activity, OU has refused to allow Plaintiffs to interact with Student Housing employees without an administrator present.

60.     This has resulted in Plaintiffs being significantly impacted in their ability to perform their essential job functions.

61.     Additionally, after their terminations in March 2021, Mr. Johnson and Mr. Romano applied for paid positions within Student Congress.

62.     Mr. Johnson applied for the Director of Civic Affairs within Student Congress. He interviewed for the position on May 6, 2021.

63.     Despite having held the position over the previous year and otherwise being highly qualified for the position, Mr. Johnson did not get the position.

64.     Mr. Romano applied for a paid position on the Executive Board of Student Congress.

11

65.     Despite being highly qualified for the position, Mr. Romano was not selected.

66.     Instead, OU hired an individual who did not even apply for the position over Mr. Romano.

67.     Mr. Johnson and Mr. Romano have also applied for, and have been unable to obtain, several other open positions with OU, including in student housing, since April 2021.

68.     The sole motivation for Plaintiffs' terminations and later failure to hire was retaliation for their exercise of their constitutionally protected speech.

69.     Each of the adverse actions against Plaintiffs as described above would have had a substantial chilling effect on Plaintiffs' constitutionally protected right to free speech and constituted an unconstitutional condition on their employment.

## CAUSES OF ACTION

### COUNT I
### FIRST AMENDMENT RETALIATION
### 42 U.S.C. § 1983:  U.S. CONST. AMEND. I
### *(Against all Defendants)*

70.     Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

71.     The First Amendment of the United States Constitution provides for Plaintiff's right to the freedom of speech.

12

72.     This right is enforceable against Defendants through the 14th Amendment of the United States Constitution.

73.     Congress created a cause of action for a violation of these rights under 42 U.S.C. § 1983.

74.     The Defendants are "persons" covered by the meaning of 42 U.S.C. § 1983.

75.     At all relevant times, Defendant Zentmeyer acted under color of state law by virtue of the performance of his duties as a manager of Defendant Oakland University, which is created by and operated under the constitution and laws of the State of Michigan.

76.     Plaintiffs engaged in protected activity under the First Amendment of the United States Constitution by participating in speech regarding cuts to Oakland University, creating a petition, organizing protests, and attempting to form a union of student employees.

77.     Plaintiffs engaged in protected activity under the First Amendment of the United Stated Constitution by complaining about the retaliation they encountered, including but not limited to, contacting OU legal counsel through their counsel.

78.     This protected activity regarded matters of public concern.

13

79.     The Individual Defendant's actions against Plaintiffs were motivated in significant part by Plaintiffs' constitutionally protected speech.

80.     Plaintiffs suffered an objectively adverse employment action when they were terminated on March 19, 2021.

81.     But for Plaintiffs' exercise of their constitutionally protected right to free speech, they would not have been terminated.

82.     In the months following Plaintiffs' terminations Defendant OU placed unconstitutional conditions on Plaintiff's positions within Student Congress, prohibiting them from talking to Student Housing employees without the presence of an OU administrator.

83.     Defendant OU also failed to hire Mr. Johnson and Mr. Romano for positions they were otherwise qualified for because of their exercise of their constitutionally protected right to free speech.

84.     Defendant Zentmeyer violated Plaintiffs' clearly established constitutional right to be free of retaliation for speech under the First Amendment to the U.S. Constitution and is not entitled to qualified immunity.

85.     These actions were undertaken via a policy, practice, or procedure of Defendant OU.

86.     As a result of Defendants' unlawful conduct, Plaintiffs were harmed, and continue to be harmed, in that they have suffered economic and non-economic

loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

87.    Defendants' actions were done intentionally and/or with reckless disregard to Plaintiffs' federally-protected rights, entitling them to punitive damages.

88.    Plaintiffs also seek an injunction against Defendant Zentmeyer in his official capacity reinstating Plaintiffs to their positions and preventing any further unconstitutional actions under *Ex Parte Young*, 209 U.S. 123 (1908).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs Jeremy Johnson, Andrew Romano, Emily Sines, Jordan Tolbert, and Samantha Torres pray that this Honorable Court grant the following remedies:

a.    Compensatory damages for monetary and nonmonetary loss in whatever amount they are found to be entitled;

b.    Exemplary and punitive damages in whatever amount they are found to be entitled;

c.    A judgment for lost wages and benefits, past and future, in whatever amount they are found to be entitled;

d.    An order of this Court reinstating Plaintiffs to the positions they would have if there had been no wrongdoing by Defendants;

e.      An injunction of this Court prohibiting any further unconstitutional or illegal

acts by Defendants; and

f.      An award of interest, costs and reasonable attorney fees.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment

against Defendants and all relief requested in this Complaint.

> Respectfully submitted,
> CROSON, TAUB, & MICHAELS, PLLC
>
> /s/ Adam M. Taub
> Adam M. Taub (P78334)
> CROSON, TAUB, & MICHAELS, PLLC
> 117 N. First St. Ste. 111
> Ann Arbor, Michigan 48104
> (734) 519-0874
> ataub@ctmlawyers.com
> *Attorney for Plaintiff*

Dated: August 30, 2021

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JEREMY JOHNSON, ANDREW ROMANO,
EMILY SINES, JORDAN TOLBERT, and
SAMANTHA TORRES,

       Plaintiffs,              Case No.

v.                                 Hon.

OAKLAND UNIVERSITY, and
JAMES ZENTMEYER, in his individual and
Official capacities,

       Defendants.

_____

Adam M. Taub (P78334)
Joseph X. Michaels (P79084)
CROSON, TAUB, & MICHAELS, PLLC
Attorneys for Plaintiff
117 N. First St. Ste. 111
Ann Arbor, Michigan 48104
(734) 519-0874
ataub@ctmlawyers.com
jmichaels@ctmlawyers.com

_____

## **DEMAND FOR JURY TRIAL**

Plaintiffs Jeremy Johnson, Andrew Romano, Emily Sines, Jordan Tolbert, and

Samantha Torres, by and through their attorneys, CROSON, TAUB, & MICHAELS,

PLLC. hereby demand a trial by jury on all issues so triable.

17

Respectfully submitted,
CROSON, TAUB, & MICHAELS, PLLC

*/s/ Adam M. Taub*
Adam M. Taub (P78334)
CROSON, TAUB, & MICHAELS, PLLC
117 N. First St. Ste. 111
Ann Arbor, Michigan 48104
(734) 519-0874
ataub@ctmlawyers.com
*Attorney for Plaintiff*

Dated: August 30, 2021